IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) Criminal No. 05-240 |
| | ) |
| THERESA MARIE BISHOP | ) |

MEMORANDUM AND ORDER

Gary L. Lancaster,
District Judge.                                                January 19, 2006

Defendant, Theresa Marie Bishop, asks the court to suppress statements she made to government agents and items seized or observed by government agents in her home or on her person. Defendant is charged with knowingly falsifying firearms purchase forms and knowingly furnishing a prohibited person with firearms.

The principal issue presented by defendant is whether the agents violated her constitutional rights when they questioned her at her place of employment, at the Federal Building, and at her residence. Defendant argues that any statements she made to the agents while at her place of employment, or elsewhere, were involuntary and made without proper Miranda warnings. She further argues that any items seized or observations made were the result of the involuntary and unwarned statements made by defendant to the government agents, and should be suppressed.

The government opposes the motion contending the agents acted lawfully in all respects in obtaining the defendant's statements and the physical items in question. The government

does not dispute that defendant was never given <u>Miranda</u> warnings. Rather, the government contends that such warnings were not necessary because defendant was not in custody at the time she voluntarily spoke with the agents. The government further contends that the defendant voluntarily surrendered the firearms at issue.

The court considered the evidence introduced at the suppression hearing held on December 21, 2005, and denied defendant's motion to suppress for the reasons set forth below.

I.  FINDINGS OF FACT

The credible evidence introduced at the hearing establishes the following:

On July 15, 2005, Bureau of Alcohol, Tobacco, and Firearms ("ATF") agents reported to defendant's place of employment to investigate a firearms purchase by defendant. At that time, defendant was in job training for her position as a caseworker with Children and Youth Services of Allegheny County. Upon arrival, ATF agents Coleman and Ferantino checked in at the front gate of defendant's place of employment and notified defendant's manager that they were there to speak with defendant. The manager retrieved defendant from training, told her that two ATF agents wanted to speak with her, and asked whether she was "okay

with the agents talking to her about a private matter." The defendant stated that she was "okay" with talking to the agents.

The agents introduced themselves to defendant. Upon hearing that they were ATF agents, she asked if they were there regarding her recent firearms purchases. The agent confirmed that this was their purpose. Ms. Bishop then met with the agents in a private conference room for approximately one hour. The door was closed throughout the interview. The agents advised defendant that she was not under arrest and that she was free to leave. Defendant was cooperative throughout the interview.

During the interview, defendant admitted to purchasing four guns between June 23 and July 2, 2005. She indicated that she took three of the guns to a friend's, Glen Edwards, residence because she did not want to keep the guns at her house.

Following the interview at defendant's place of employment, defendant accepted a ride from the agents to her home and the Federal Building.[1] Defendant was given the option of driving her own car; however, she declined and rode along with the agents instead. Upon arrival at defendant's residence, the agents waited on her porch while she secured her dog. Defendant then

---

1   Defendant testified that the agents drove her to the Federal Building, and then to her residence. The ATF agents testified that they drove defendant to her home first, then to the Federal Building. Because we do not find that defendant was in custody at any time during the day of July 15, 2005, the order of destinations is irrelevant to our ruling on defendant's motion to suppress.

allowed the agents into her home and surrendered a Smith and Wesson firearm from her bedroom dresser. This firearm is not included in the Indictment in this case. The agents did not search defendant's residence at any time. The entire visit to defendant's residence lasted approximately fifteen minutes.

At that point, defendant and the agents drove past Mr. Edwards' residence. Defendant indicated which house belonged to Mr. Edwards, however, the agents did not stop. The agents then drove defendant to the Federal Building for another interview that lasted approximately 45 minutes. While at the Federal Building, the agents attempted to record a telephone conversation between Ms. Bishop and Mr. Edwards, but were unsuccessful because Mr. Edwards could not be reached.

The agents drove defendant back to her car at her place of employment, and advised her not to contact Mr. Edwards, and not to attempt to obtain the firearms from him. Later that afternoon, however, defendant telephoned the agents to notify them that she had obtained the firearms from Mr. Edwards, and had them at her residence. When the agents arrived at defendant's residence, she invited them inside and voluntarily surrendered a Ruger P345, a Cobray −11-9, and a Century International, WASR 10. Upon surrender of the firearms, defendant signed notices of abandonment of property forms for all of the firearms.

II.  STATEMENT OF REASONS

The law is clear that if <u>Miranda</u> warnings are not given before a person "in custody" is questioned, evidence resulting from the questioning must be suppressed. <u>Miranda v. Arizona</u>, 384 U.S. 436, 444-45 (1966). An individual is in custody when he has been "deprived of his freedom of action in any significant way." <u>Id</u>. at 444.  In <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663 (2004), the Supreme Court set forth the following <u>Miranda</u> custody test:

> Two discrete inquiries are essential to determine: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt that he or she was not at liberty to terminate the interrogation and leave.  Once the scene is set and the players' lines and actions reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a ... restraint of freedom of movement of the degree associated with a formal arrest.

In addition, the Court of Appeals for the Third Circuit has noted three factors that are among those that should be considered in determining whether an individual was in custody.  <u>United States v. Jacobs</u>, 431 F.3d 99, 105 (3d 2005).  First, a court should look at the location of the questioning.  <u>Id</u>.  For example, "all 'station house' interrogations should be scrutinized with extreme care...." <u>Id</u>. A second factor is the information known by the officer regarding the suspect's culpability.  <u>Id</u>. A third factor is whether the officer revealed his belief that the suspect was

guilty.  Id. The stronger an officer's belief that the suspect committed the crime, "the greater the tendency to bear down in interrogation and create the kind of atmosphere of significant restraint that triggers Miranda, and vice versa."  Id. (quoting United States v. Hall, 421 F.2d 540, 545 (2d Cir. 1969)).

Here, defendant has failed to demonstrate that she was in custody at any time on the date in question.  The circumstances surrounding the interrogation simply do not amount to "custody."  First, defendant was questioned at her place of employment.  Although, the interview took place in a conference room, behind closed doors, if defendant felt intimidated or uncomfortable at any time, she did not say so. Moreover, she could have left the room or sought out her supervisor at any time.

Further, the officers advised her that she was not under arrest and free to leave.  In addition, it does not appear that the ATF agents possessed strong beliefs as to defendant's culpability, nor did they voice any such beliefs during the interview.  In fact, Agent Ferantino testified that he and Officer Coleman were, "surprised that defendant knew why they were there because they were only there to inquire about one firearm purchase, and she told them about four purchases."  Moreover, the fact that defendant was given

the option to drive her own car to her home and to the Federal Building after the initial interview at her place of employment supports our finding that she was not in custody.

Under the circumstances, we believe a reasonable person would have felt that she was at liberty to terminate the interrogation and leave. As such, we find that defendant was not in custody, and therefore, no Miranda warnings were necessary.

Because defendant contends that the items seized were the result of the statements she made to the government agents are illegal because given without Miranda warnings, and has offered no other legal argument for her motion to suppress the firearms surrendered to the agents, her motion to suppress the items seized is without merit. In sum, we find that at the relevant time defendant's statements were voluntary, she was not in custody, did not require Miranda warnings, and that she voluntarily surrendered the firearms at issue.

III.   CONCLUSION

The government has sustained its burden of proof in this instance. The credible evidence establishes that defendant's constitutional rights were not violated on July 15, 2005. Accordingly, defendant's motion to suppress is DENIED.

BY THE COURT:

_____, J.

cc:  All Counsel of Record